UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRANDON MICHAEL COUNCIL,    )
         )
       Plaintiff,    )
         )
       v.    )   No. 2:21-cv-00302-JPH-MKK
         )
GINA SACCHETTI Dr.,    )
THOMAS J. WATSON Warden,    )
         )
       Defendants.    )

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Brandon Council alleges that Defendants were deliberately indifferent to his serious mental health needs while he was an inmate in the Special Confinement Unit ("SCU") at United States Penitentiary – Terre Haute ("USP – Terre Haute"). Mr. Council and Defendants have each moved for summary judgment. Dkts. [188], [194]. For the reasons below, Mr. Council's motion is **DENIED** and the Defendants' motion is **GRANTED**.

**I.**
**Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility

1

determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

2

Mr. Council also filed a motion for "default judgment," arguing Defendants failed to respond to his summary judgment motion. Defendants' motion for summary judgment, however, responds to Mr. Council's arguments. And regardless, "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

Mr. Council's motion for "default judgment" is **DENIED**. Dkt. [205].

## II.
## Factual Background

### A. Parties

In 2019, Mr. Council was sentenced to death after a jury found him guilty of bank robbery resulting in death and using and carrying a firearm during and in relation to a crime of violence in a manner causing death. *See United States v. Council*, 77 F.4th 240 (4th Cir. 2023). Mr. Council's death sentence was later commuted to a life sentence without the possibility of parole. *See* https://www.justice.gov/pardon/media/1382291/dl?inline.

The SCU at USP – Terre Haute houses federal inmates who have been sentenced to death. Dkt. 188-1 ¶ 5 (Watson declaration).  Mr. Council appears to remain housed at USP – Terre Haute in the SCU. *See* https://www.bop.gov/inmateloc/ (last visited March 17, 2026).[1]

---

[1] The current administration is attempting to move Mr. Council and others whose death sentences were commuted to ADX – Florence, the Bureau of Prison's supermax prison in Colorado. Mr. Council and others are pursuing a lawsuit to prevent such a move. *See*

At all times relevant to the allegations in Mr. Council's complaint, Thomas Watson was the Complex Warden for the Federal Correctional Complex – Terre Haute, which includes USP – Terre Haute, dkt. 188-1 ¶ 1, and Dr. Gina Sacchetti was a staff psychologist at USP – Terre Haute, dkt. 188-6 ¶¶ 2, 6 (Sacchetti declaration).  Dr. Sacchetti previously served as the primary staff psychologist between March 2021 and January 2023. *Id.*

### B. Facts

The decision to house Mr. Council in the USP – Terre Haute SCU, as with other federal death row inmates, was made by the Bureau of Prison's ("BOP") Designation and Sentence Computation Center in Texas, not by USP – Terre Haute officials. Dkt. 188-1 ¶ 6. USP – Terre Haute officials promulgate policies governing SCU conditions and operations. *Id.* ¶ 8. Those policies were modified during the COVID pandemic to reduce the risk of disease transmission. *Id.* ¶ 7.

Under applicable policies for the SCU, (1) a staff psychologist must perform an initial psychological assessment within 14 days of an inmate's assignment to the SCU; and (2) "mental status examinations" must occur every 30 days thereafter; and (3) a staff psychologist should assist inmates with problems and provide individual counseling as needed. Dkt. 188-2 at 8 ("Operation and Security of the Special Confinement Unit (SCU)"). SCU inmates in "Phase I," the

---

*Taylor et al. v. Trump et al.*, No. 1:25-cv-3742-TJK (D.D.C.). On February 11, 2026, the District Court for the District of Columbia entered a preliminary injunction prohibiting the transfer of Mr. Council and the other plaintiffs to ADX while that suit proceeds. *Id.* at dkt. 70.

strictest security level, are allowed 5 hours a week out-of-cell recreation time and access to the law library. Dkt. 188-2 at 10, 15.

On November 6, 2019, Mr. Council underwent a psychological intake screening performed by a non-defendant. Dkt. 188-7 at 75-76 (Mr. Council's psychology records). Although Mr. Council self-reported a prior episode of suicidal thoughts when he was 11 or 12, he stated that he had never previously been diagnosed with a mental illness as an adult or that he had received any psychiatric medications. *Id.* at 75; dkt. 189 at 116. The psychologist gave Mr. Council a "Care Level" of "CARE1-MH." Dkt. 188-7 at 76. This is the BOP's lowest-level mental health designation. Dkt. 189 at 124.

USP – Terre Haute psychology staff perform weekly walkthroughs in the SCU. Dkt. 189 at 121. Records related to Mr. Council reflect that Dr. Sacchetti evaluated Mr. Council on January 12, 2022 (30-day SCU review), December 22, 2021 (at Mr. Council's request), December 8, 2021 (SCU review plus consultation at Mr. Council's request), November 3, 2021 (SCU review), October 27, 2021 (at Mr. Council's request), October 13, 2021 (at Mr. Council's request), October 6, 2021 (SCU review), September 22, 2021 (at Mr. Council's request), September 1, 2021 (SCU review), August 25, 2021 (at Mr. Council's request), August 4, 2021 (SCU review plus consultation at Mr. Council's request), July 7, 2021 (SCU review), June 8, 2021 (SCU review), May 19, 2021 (SCU review plus consultation at Mr. Council's request), April 7, 2021 (SCU review plus consultation at Mr. Council's request), March 16, 2021 (at Mr. Council's request), and March 3, 2021 (SCU review plus consultation at Mr. Council's request). Dkt. 188-7 at 1-39.

During several visits with Dr. Sacchetti and other mental health providers, Mr. Council stated that his conditions of confinement in the SCU amounted to "torture" and cruel and unusual punishment and were causing him mental health problems. *See, e.g., id.* at 33. Dr. Sacchetti advised Mr. Council to direct his concerns about the conditions of his confinement, including the limited amount of out-of-cell time, to other USP – Terre Haute staff. *Id.* Otherwise, she attempted to provide Mr. Council with various psychological coping skills. *Id.*

Mr. Council also discussed with Dr. Sacchetti on several occasions the possibility of his taking psychiatric medication. Dr. Sacchetti repeatedly explained to Mr. Council that, as a psychologist and not a psychiatrist, she could not prescribe medications. Dkt. 189 at 147-49. She more than once encouraged Mr. Council instead to put in a sick call request to USP – Terre Haute Health Services if he wished to explore taking medication. Dkt. 188-7 at 26, 14; dkt. 189 at 190-93.

On October 27, 2021, Dr. Sacchetti advised Mr. Council that he could bring up the topic of possibly taking psychiatric medication when he had his upcoming chronic care appointment with a physician. Dkt. 189 at 172-73. During that appointment with Dr. William Wilson on November 5, 2021, however, Mr. Council did not mention psychiatric medication. *Id.* at 201. During his deposition, Mr. Council testified that he did not know at that time that he could do so.[2] *Id.* at 201.

---

[2] Also, even though Mr. Council claims he later became aware that Dr. Wilson could prescribe psychiatric medications, he has never asked Dr. Wilson to do so. *Id.* at 67.

Also in the fall of 2021, Dr. Sacchetti raised Mr. Council's concerns about the SCU conditions of confinement to the USP – Terre Haute Chief Psychologist. Dkt. 188-6 ¶ 12.  And in December 2021, she contacted USP – Terre Haute Health Services to make them aware of Mr. Council's request for psychiatric medication.[3] *Id.*; dkt. 188-7 at 4.

Besides Dr. Sacchetti, Mr. Council never sought or discussed obtaining psychiatric medication with any psychological provider. *See* Dkt. 189 at 130, 151-52.

Mr. Council submitted grievances to Warden Watson about the SCU conditions and the psychological harm they were causing him, but the grievances did not result in any change in those conditions. Dkt. 195-1 at 4-5.

### C. Procedural History

Mr. Council filed this action on August 2, 2021. Dkt. 1. The Court screened and dismissed the original complaint and gave Mr. Council the opportunity to amend. Dkt. 10. Mr. Council filed an amended complaint, which the Court also deemed subject to dismissal because he failed to sign it but gave him another opportunity to amend. Dkts. 19, 20. On October 28, 2021, Mr. Council filed his second amended complaint. Dkt. 21. Upon screening it, the Court concluded:

---

[3] Mr. Council asserts Dr. Sacchetti must be lying about these discussions, and/or that any documentation indicating a discussion took place must be a forgery. *See* dkt. 199 at 13-15. Mr. Council has no personal knowledge or evidence, however, to support this speculation. He notes that the designated medical records do not contain a cross-reference from medical staff mentioning whether Dr. Sacchetti had talked to anyone about his desire for psychiatric medication. The absence of such cross-documentation does not contradict Dr. Sacchetti's sworn statement or the documentation in the psychology records that she did have that discussion.

> Liberally construed, the second amended complaint states a claim against Warden Watson and Dr. Sacchetti for deliberate indifference to a serious medical need. Specifically, the second amended complaint alleges that prolonged solitary confinement has aggravated Mr. Council's mental health issues, that these defendants are aware of those issues, but that they have not taken steps within their authority to alleviate those issues—such as removing him from solitary confinement, reporting the effect of solitary confinement on his mental health, or ensuring that he be evaluated for medication by a psychiatrist.

Dkt. 23 at 3.

Mr. Council filed a third amended complaint seeking $100 million in damages. Dkt. 101 at 7. The Court screened the third amended complaint and concluded, "Mr. Council's Eighth Amendment damages claims alleging deliberate indifference to a serious medical need shall proceed against Warden Watson and Dr. Sacchetti in their individual capacities under the theory set forth in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and *Carlson v. Green*, 446 U.S. 14 (1980)." Dkt. 100 at 6.

On June 13, 2023, this action was stayed while Mr. Council pursued a direct appeal of his convictions and sentence. Dkt. 119. On October 29, 2024, the stay was lifted after the Supreme Court denied certiorari from the Fourth Circuit's affirmance of Mr. Council's convictions and sentence, thus ending the direct appeal process. Dkt. 149.

On May 1, 2025, Mr. Council filed a motion for summary judgment. Dkt. 194. On May 2, 2025, Defendants filed a motion for summary judgment. Dkt. 188.

### III.
### Discussion

Mr. Council presents two categories of claims: (1) the conditions of confinement in the Terre Haute – USP SCU were damaging to Mr. Council's mental health and Defendants' failure to change those conditions or move Mr. Council out of the SCU violated the Eighth Amendment; and (2) the mental health treatment he received in the SCU was inadequate and amounted to deliberate indifference in violation of the Eighth Amendment.

### A. Conditions of Confinement

Defendants argue that Mr. Council's claim based on his placement in the SCU adversely impacting his mental health cannot proceed under *Bivens*. Mr. Council's only response is that this Court allowed *Bivens* claims to proceed at screening. *See* dkt. 199 at 7. But screening orders are not final orders, and the Court may reconsider them under Federal Rule of Civil Procedure 54(b). *See Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). The Court concludes that Mr. Council's claim based on allegations that placement in the SCU adversely impacted his mental health cannot proceed under *Bivens*.

There is no Congressional authority to award damages against federal officials who violate the Constitution while acting under color of federal law. *Ziglar v. Abbasi*, 582 U.S. 120 (2017). Fifty years ago, the Supreme Court held in *Bivens* that district courts have the implied authority to award damages against federal officials for unreasonable searches and seizures in violation of the Fourth Amendment. 403 U.S. at 397. That implied authority was extended twice: first,

to actions alleging gender discrimination in federal employment in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and second, to actions alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980). But these "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131.

In the past four decades, the Court has declined to create any new contexts for *Bivens* claims. *Egbert v. Boule*, 142 S. Ct. 1793, 1799-1800 (2022) (listing cases). Expanding *Bivens* to a new context is a "disfavored judicial activity." *Ziglar*, 582 U.S. at 135.

To determine whether a *Bivens* remedy is available to a plaintiff suing a federal actor, the Court makes a two-step inquiry. First, it asks whether the claim presents a new *Bivens* context by determining whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Ziglar*, 582 U.S. at 139. Second, if the claim presents a new *Bivens* context, the Court then asks whether there are any special factors that counsel hesitation about extending a damages remedy to the new context. *Egbert*, 142 S. Ct. at 1803.

### 1. "New Context"

*Carlson* extended a *Bivens* remedy to the context of an Eighth Amendment claim based on deliberate indifference to a serious medical need. However, "[a] claim may arise in a new context even if it is based on the same constitutional

10

provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 140.

In *Ziglar*, the Supreme Court held that Fifth Amendment due process claims by suspected terrorist detainees alleging they were subjected to unconstitutional conditions of confinement bore "little resemblance" to the claims in *Bivens*, *Davis*, or *Carlson*, and therefore presented a "new context". Since then, several courts have applied *Ziglar* to foreclose *Bivens* conditions of confinement claims arising under the Eighth Amendment, including claims related to prolonged placement in solitary confinement. *See, e.g.*, *Cohen v. Trump*, 2024 WL 20558 at *3 (2nd Cir. Jan. 2, 2024), *cert. denied* (declining to extend *Bivens* to Eighth Amendment claim of unconstitutional conditions of solitary confinement); *Mammana v. Barben*, 856 F. App'x 411, 414 (3d Cir. May 21, 2021) (Eighth Amendment allegation of "deliberate indifference" to prisoner's welfare based on confinement in segregation bore "little resemblance" to *Carlson*'s medical deliberate indifference claim); *Tate v. Harmon*, 54 F.4th 839, 847 (4th Cir. 2022) (Eighth Amendment claim of unconstitutional conditions of

11

confinement in segregation unit was a *Bivens* "new context"); *Sebolt v. Tyndall*, 2021 WL 4948959 (S.D. Ind. Oct. 25, 2021) (inmate's claim of unconstitutional conditions of confinement in USP – Terre Haute segregation unit presented new *Bivens* context).

In *DeBenedetto v. Salas*, 2023 WL 6388127 (N.D. Ill. Sept. 29, 2023), the plaintiff alleged that while placed in a segregation unit in a federal prison, he "experienced significant mental health issues and his psychological condition deteriorated." His lawsuit alleged that the defendants violated his Eighth Amendment rights by subjecting him "to prolonged solitary confinement despite their knowledge of his serious mental illness and that the confinement exacerbated his mental health issues . . . ." *Id.* at * 2. The court found that this claim presented a new *Bivens* context, rejecting the plaintiff's argument that his claim should proceed under *Carlson*. "While DeBenedetto's allegation about prolonged solitary confinement might be construed as an attempt to raise a claim for deliberate indifference to serious mental health problems, which is somewhat similar to *Carlson,* the claim still presents a new context because DeBenedetto does not allege that the conditions of his solitary confinement caused him to receive inadequate medical care or that he was denied medical treatment." *Id.* at * 6. In other words, the relevant "'mechanism of injury'" was the conditions of confinement, not deliberate indifference to medical needs. *Id.* (quoting *Cohen v. United States*, 640 F. Supp.3d 324, 338 (S.D.N.Y. 2022), *aff'd*, 2024 WL 20558 (2nd Cir. 2024)).

The Court finds *DeBenedetto*'s reasoning persuasive in concluding that Mr. Council's claim presents a new *Bivens* context. A conditions-of-confinement claim very often has as an underlying factor the psychological and/or mental harm that such conditions cause an inmate. *See Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012) (explaining that purely psychological injuries may support an Eighth Amendment conditions of confinement cause of action under the Prison Litigation Reform Act for injunctive relief, nominal damages, and punitive damages). Concluding that that a claim alleging that a prisoner has suffered psychologically from conditions of confinement is identical to *Carlson* would represent an expansion of *Bivens*. Mr. Council's claim essentially alleges that being confined in the SCU is in and of itself an Eighth Amendment violation and therefore presents a new *Bivens* context.  Mr. Council's allegations that his confinement in the SCU directly impacted his mental health does not change the outcome.

### 2. "Special Factors"

In applying this factor, a district court "faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1805 (emphasis in original) (cleaned up). Additionally, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* at 1804 (quoting *Ziglar*, 582 U.S. at 137). And this is true even if the individual plaintiff alleges that he does not have access to the alternative remedy. *Id.* at 1807 ("whether a

13

given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts").

The BOP's administrative remedy process, 28 C.F.R. § 542.10 *et seq.*, provides inmates with the ability to seek formal review of any complaint related to the conditions of their confinement. Additionally, in *Ziglar,* the Supreme Court recognized the availability of injunctive relief to address conditions-of-confinement claims such as Mr. Council's. 582 U.S. at 144. Indeed, a fellow inmate, represented by the American Civil Liberties Union, is pursuing class action injunctive relief related to the USP – Terre Haute SCU conditions of confinement. *Kadamovas v. Director, Federal Bureau of Prisons*, 2:23-cv-00022-MPB-MKK (S.D. Ind.).   And to the extent injunctive relief cannot make Mr. Council whole for any past injuries, the Federal Tort Claims Act allows for the recovery of damages against the United States under certain circumstances where federal agents, including prison officials, commit a state-law tort against an inmate. Additionally, when Congress passed the Prison Litigation Reform Act in 1995, it did not expand the availability of *Bivens* actions against federal officials.   *See Sargeant v. Barfield*, 87 F.4th 358, 367-68 (7th Cir. 2023). Furthermore, "[w]ith respect to . . . claims against . . . Executive Officials, it must be noted that a *Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Ziglar*, 582 U.S. at 140 (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).

Here, Mr. Council is essentially trying to use a claim for money damages to force a change in government policies related to placement in the SCU and the

14

conditions therein. There are ample reasons to conclude that "special factors" would not warrant expanding *Bivens* into this context. Defendants are therefore entitled to summary judgment with respect to Mr. Council's claims that his initial and continuing placement in the SCU in and of itself violated the Eighth Amendment.

### B. Deliberate Indifference to Serious Medical Needs

Mr. Council's remaining claim is based on allegations that federal officials were deliberately indifferent to his serious mental health needs. Defendants argue that this claim cannot proceed under *Bivens* because Mr. Council's alleged medical needs are not comparably serious to those that existed in *Carlson*. The Seventh Circuit recently explained, however, that claims generally may proceed under *Bivens/Carlson* if they "arise from allegedly constitutionally inadequate medical care in a federal prison . . . ." *Watkins v. Mohan*, 144 F.4th 926, 934 (7th Cir. 2025). The fact that a particular plaintiff's inadequate medical care was not related to a medical emergency does not place it outside *Carlson. Id.* at 935. The Court concludes that Mr. Council's claim alleging deliberate indifference to his mental health needs may proceed under *Bivens* and proceeds to address the merits of Defendants' motion for summary judgment.

Although this case arises under *Bivens*, the Eighth Amendment deliberate indifference standard is identical to the standard applied in state prisons for cases arising under 42 U.S.C. § 1983. *See id.* at 937-38 (noting for qualified immunity purposes that federal prison medical and correctional staff "can consult decades of circuit precedent applying the deliberate-indifference

15

standard" in state prisons and county jails, in addition to federal prisons). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a [prison] official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Mr. Council's mental health condition was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Defendants acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Mr. Council]'s health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up). Still, the alleged seriousness (or not) of Mr. Council's mental health condition is relevant in determining whether Defendants were deliberately indifferent to that condition.

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Council "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

"Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference

16

must be inferred from the propriety of their actions." *Dean,* 18 F.4th at 241 (internal citations omitted).

The Seventh Circuit has held that deliberate indifference occurs when a medical provider defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties,* 836 F.3d at 729 (quoting *Cole v. Fromm,* 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle,* 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

Here, Mr. Council does not challenge the quality of Dr. Sacchetti's psychological care but alleges solely that she should have done more to help him obtain a prescription for psychiatric medication. Mr. Council does not dispute that Dr. Sacchetti repeatedly advised him that she could not prescribe such medication and that if he wanted to try it, he would need to contact another medical provider through USP – Terre Haute Health Services. And, despite that knowledge, Mr. Council has never reached out to another medical provider requesting a psychiatric medication prescription, with one possible very limited

17

exception.[4] Furthermore, Mr. Council stated in his March 2025 deposition that he does not think any such prescription would be of much use anyway because his mental health problems stem from the SCU conditions of confinement. Mr. Council also does not dispute that he had never taken psychiatric medication or been diagnosed with a psychiatric illness before entering prison, nor that he was given the lowest-possible mental health code under BOP policy. *See* dkt. 189 at 116, 124.

Mr. Council also claims Dr. Sacchetti was required to perform an "initial psychological examination" upon him before another medical provider would or could consider prescribing medication to him and she failed to do so. *See, e.g.*, Dkt. 188-9 at 11. Although the record is clear that Dr. Sacchetti did repeatedly evaluate him – at least once a month, as required by policy for the SCU, and often more – he contends that these evaluations were insufficient to begin the process of him being placed on psychiatric medication. He instead argues that there should have been "testing," but designates no evidence regarding what type of "test" or "tests" should have been done.  Nor does he argue that Dr. Sacchetti's evaluations were inadequate.

To prevail on a deliberate indifference medical care claim, "[i]t is not enough that the plaintiff simply believes the treatment was ineffective or disagrees with the doctor's chosen course of treatment. The challenged plan

---

[4] In an interrogatory response, Mr. Council stated that he asked an "unknown nurse" about receiving medication, but after she told him he needed to "put in a cop-out to the Psychology department . . . I ended all attempts to acquire psychological medication." Dkt. 188-9 at 11.

must deviate so substantially from accepted professional judgment that no reasonable physician would reach the same judgment." *Thomas v. Martina*, 991 F.3d 763, 772 (7th Cir. 2021) (cleaned up). Mr. Council has designated no such evidence here.  Mr. Council is the nonmoving party, so he receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). That said, he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.* Here, Mr. Council designates no evidence showing that Dr. Sacchetti should have done something differently in responding to Mr. Council's requests for psychiatric medication.

Last, Mr. Council challenges Dr. Sacchetti's sworn assertion, supported by documentation in his psychology records, that she brought up his requests for medication with the USP – Terre Haute medical staff. *See* dkts. 199 at 13-15 (Mr. Council's summary judgment response brief); 188-6 ¶ 12 (Sacchetti declaration); dkt. 188-7 at 4 (psychology records). Mr. Council's challenges, however, even if they are based on sworn assertions,[5] are not based on personal knowledge as required by Fed. R. Civ. P. 54(c)(4). "[A]lthough personal knowledge may include reasonable inferences, those inferences must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (cleaned

---

[5] Mr. Council testified during his deposition that he did not believe Dr. Sacchetti spoke with or contacted medical staff. Dkt. 189 at 177-78.

up). Mr. Council's challenges on this point are speculative and conclusory and therefore insufficient to rebut Dr. Sacchetti's sworn declaration and the corroborating psychology records. *See White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (non-movant receives the "benefit of reasonable inferences from the evidence, but not speculative inferences in his favor") (cleaned up).

In sum, the designated evidence shows that (1) Dr. Sacchetti repeatedly advised Mr. Council that she could not prescribe psychiatric medication and that he would need to discuss his desire for medication with medical staff; (2) Dr. Sacchetti conducted numerous, regularly scheduled psychological evaluations of Mr. Council and treated him in accordance with her training; (3) Dr. Sacchetti brought up Mr. Council's desire for medication with USP – Terre Haute medical staff; (4) Mr. Council never attempted to obtain psychiatric medication from a qualified medical provider, despite acknowledging that he could have done so; (5) it is unclear how serious Mr. Council's mental health issues were, especially given his lack of a psychiatric illness diagnosis or ever having taken psychiatric medication before entering prison and his assignment to the BOP's lowest-level mental health code.

No reasonable jury could conclude, based on this designated evidence, that Dr. Sacchetti was deliberately indifferent to Mr. Council's mental health needs. And, because Dr. Sacchetti was not deliberately indifferent, it necessarily follows that Warden Watson could not have been deliberately indifferent in his

20

role as a non-medical supervisory official.[6] *See McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (non-medical prison official can rely on the expertise of medical personnel unless there is evidence official was aware medical personnel were mistreating or not treating an inmate). Defendants are entitled to summary judgment on Mr. Council's deliberate indifference claims.

## IV. Conclusion

Mr. Council's motions for summary judgment and for default judgment are **DENIED**. Dkts. [194], [205]. Defendants' motion for summary judgment is **GRANTED**. Dkt. [188]. Final judgment consistent with this Order and the Court's orders screening the second and third amended complaints, dkts. [23] and [100], will issue separately.

**SO ORDERED.**

Date: 3/17/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

BRANDON MICHAEL COUNCIL
63961056
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

---

[6] The Court need not address Defendants' argument that they are entitled to qualified immunity on all of Mr. Council's claims.

21